Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Alex Dzatko*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Alexander P. Dzatko, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| The Prudential Insurance Company of America, | |
| Defendant. | |

Now comes the Plaintiff Alexander P. Dzatko (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendant, he states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

-1-

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, J.P. Morgan Chase Bank, N.A. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by The Prudential Insurance Company of America (hereinafter referred to as "Prudential"). The specific Prudential group long-term disability policy is known as Group Contract No.: G-50684-DE (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4. Upon information and belief, the Policy was included in and part of an employee benefit plan, specifically named the J.P. Morgan Chase Bank, N.A. Disability Plan (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, Prudential functioned as the claim administrator of the Policy. However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Prudential.

6. Prudential operated under a financial conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the

decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7. Prudential's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of his disability benefits.

8. The Company, Prudential and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

## *Venue*

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

## *Nature of the Complaint*

10. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

11. Plaintiff also seeks a determination in this action that he is disabled and meets the "Any Gainful Occupation" definition of disability set forth in the Plan and/or Policy as the evidence he submitted to Prudential supports a determination by the Court that he meets the Plan and/or Policy's "Any Gainful Occupation" definition of disability, such that he is also entitled to these benefits. Plaintiff believes this issue is ripe before the Court since the "Regular Occupation" timeframe in the Plan and/or Policy will have expired at the time of briefing this matter.

1  12. After working for the Company as a loyal employee in the position of a Mortgage Banker, Plaintiff became disabled on or about May 22, 2015, and has remained continuously disabled since that date due to serious medical conditions.

13. Following the onset of his disability, Plaintiff filed a claim for short-term disability benefits which was administered by the Company, meaning it made the determination as to whether Plaintiff was disabled. The relevant short-term disability Plan was self-insured by the Company, meaning that it paid all short-term disability benefits if Plaintiff was found disabled. Plaintiff's short-term disability benefits have been paid and exhausted with the Company.

14. Following the exhaustion of his short-term disability claim and benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by Prudential. Prudential made every decision in Plaintiff's long-term disability claim.

15. Upon information and belief, the relevant Prudential Policy and definitions of disability governing Plaintiff's long-term disability claim are as follows:

> "You are disabled when Prudential determines that:
> - You are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury;* and
> - You are under the *regular care* of a *doctor;* and
> - You have a 20% or more loss in your *monthly earnings* due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
>
> - You are unable to perform that duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience; and
> - You are under the regular care of a doctor."

-4-

16. In support of his claim for long-term disability benefits, Plaintiff submitted to Prudential medical evidence which supported his allegation that he met any definition of disability as defined in the relevant Policy.

17. In a letter dated February 10, 2016, Prudential informed Plaintiff it was denying his claim for long-term disability benefits.

18. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's February 10, 2016 denial of his claim and submitted additional medical, vocational and lay-witness evidence supporting his appeal and his allegation that he is disabled and meets any definition of disability in the Policy.

19. Plaintiff submitted to Prudential a September 12, 2016 narrative letter authored by his board certified treating doctor who confirmed each of Plaintiff's diagnosis and symptoms.

20. Plaintiff also submitted to Prudential an October 14, 2016 narrative letter authored by another board certified treating doctor who opined, "…it is my conclusion that [Plaintiff] continue [long] term disability for another 6 months."

21. Plaintiff also submitted to Prudential an Independent Medical Examination report dated May 23, 2016, wherein after a physical examination of Plaintiff, an examining physician board certified in orthopedic surgery concluded, "…it is apparent that [Plaintiff] would not be able to perform his job as a mortgage banker…"

22. Plaintiff submitted to Prudential a Functional Capacity Evaluation report dated May 2, 2016, wherein after an extensive several hour evaluation, a qualified physical therapist concluded, "…[Plaintiff] is UNABLE to perform the physical demands or material duties of his past work as a Mortgage Banker or ANY other type of SEDENTARY work." (Original emphasis).

23. Further supporting his claim, Plaintiff submitted a vocational report from a certified vocational expert dated August 10, 2016, who after interviewing Plaintiff and reviewing the aforementioned evidence along with the "Regular Occupation" and "Any Gainful Occupation" definitions of disability set forth in the Policy concluded, "…[Plaintiff] is totally disabled from a physical perspective and meets both the regular occupation and any gainful occupation definitions of disability in the Prudential policy and should be granted benefits by Prudential."

24. Plaintiff also submitted updated medical records from each of his treating providers and a list of his current medications, as well as the side effects they cause and the impact they have on his ability to work in any occupation or in any work environment.

25. Plaintiff also submitted to Prudential a sworn affidavit authored by himself confirming he is unable to work in any occupation and that his conditions had not improved in any meaningful way since the date he originally became disabled.

26. As part of its final review of Plaintiff's claim for long-term disability benefits, Prudential obtained a medical records only "paper review" of Plaintiff's claim from a physician or medical professional of its choosing. Prudential did not disclose the identity of the reviewing physician or medical professional to Plaintiff, either during its administrative review of his claim or following its final denial.

27. Upon information and belief, Plaintiff asserts the reviewing physician and/or medical professional may be a long time medical consultant for Prudential and/or the disability insurance industry. As a result, the reviewing physician and/or medical professional may have an incentive to protect his/her own consulting relationship with Prudential and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim,

in order to provide opinions and report(s) which are favorable to insurance companies and that supported the denial of Plaintiff's claim.

28. In letters dated August 4, 2016 and August 9, 2016, in order to engage Prudential in a dialogue so he could perfect any alleged deficiencies in his claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Prudential and the opportunity for him and his medical professionals to respond to the reviews prior to Prudential rendering a determination in his claim.

29. Prior to rendering its denial in Plaintiff's claim, Prudential unlawfully refused to honor Plaintiff's request and never shared with him or his treating providers who opined he was disabled, the medical records only "paper review" authored by its reviewing physician or medical professional so he could respond to the report and perfect his claim.

30. Prudential's failure to provide Plaintiff and his treating providers with the opportunity to respond to its reviewing physician's or medical professional's report is an ERISA procedural violation, and precluded Prudential from conducting a full and fair review pursuant to ERISA. Prudential's actions also violated Ninth Circuit case law as the Court held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, *another for the final denial*. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer. The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' *A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement*" (emphasis added).

31. In a letter dated October 21, 2016, notwithstanding Plaintiff's aforementioned evidence which proved he met both the "Regular Occupation" and "Any Gainful

Occupation" definitions of disability in the Policy, Prudential notified him it had denied his claim for long-term disability benefits.

32. In its denial letter dated October 21, 2016, Prudential notified Plaintiff he had exhausted his mandatory administrative levels of review and that he could file a civil action lawsuit in federal court pursuant to ERISA.

33. Prudential's October 21, 2016 denial letter is clear evidence that it breached its fiduciary duty and failed to provide a full and fair review, while in the process also committing ERISA procedural violations that were specifically enacted to protect individuals such as the Plaintiff. Prudential violated ERISA for numerous reasons including but not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that he met all definitions of disability in the Policy.

34. In evaluating Plaintiff's claim on appeal, Prudential owed him a fiduciary duty and it had an obligation pursuant to ERISA to administer it, "solely in [his] best interests and other participants" which it failed to do. [1]

35. Prudential failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his appeal in order to prove he is disabled as that term is defined in

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

the Policy. Prudential's failure to investigate the claim and to engage in this dialogue, and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is evidence he did not receive a full and fair review.

36. Plaintiff asserts Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to have Plaintiff's claim reviewed by truly independent medical professionals; failing to have Plaintiff examined/evaluated by truly independent medical professionals, with testing that provided valid test results; by failing to credit Plaintiff's reliable evidence; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by him and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all of his medical conditions and the work limitations set forth in his medical evidence as well as the impact the combination of these medical conditions and limitations have on his ability to work in any occupation; by failing to engage Plaintiff in a dialogue so he could respond to the reviewing physician's report by submitting the necessary evidence to perfect his claim so he could prove that he is "disabled" as that term is defined in the Policy, and by failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

37. Plaintiff asserts a reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Prudential undertook as the decision maker and the payor of benefits. Prudential's conflict of interest provided it with a financial incentive to deny Plaintiff's claim.

38. Prudential's conflict of interest manifested in that when it denied Plaintiff's claim, it saved a significant amount of money.

39. Plaintiff is entitled to discovery regarding Prudential's aforementioned conflicts of interest. Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by Prudential to retain a reviewing medical professional in Plaintiff's claim, and of *any* individual who reviewed his claim. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Prudential's decision to deny his claim.

40. With regard to whether Plaintiff meets any definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein abused any discretion that may have been afforded in the Policy, and are so flagrant they justify *de novo* review.

41. As a direct result of Prudential's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost long-term disability benefits.

42. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendant.

43. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he has incurred as a result of Defendant's nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that he meets the "Regular Occupation" definition of disability set forth in the Plan and/or Policy and that he is entitled to these disability benefits from the date he was first denied these benefits through the date of judgment with prejudgment interest thereon;

B. For an Order directing Defendant to continue paying Plaintiff the aforementioned benefits until such a time as he meets the conditions for the termination of benefits;

C. Assuming the issue is ripe before the Court, Plaintiff seeks an Order that the evidence in Plaintiff's claim is sufficient to prove that he also meets the "Any Gainful Occupation" definition of disability set forth in the relevant Plan and/or Policy, and that he is entitled to these benefits through the date of judgment, with pre-judgment interest thereon;

D. Assuming the Court issues an Order that Plaintiff meets the "Any Gainful Occupation" definition of disability in the Plan and/or Policy, Plaintiff seeks an Order directing Defendant to continue paying these disability benefits until such a time as he meets the conditions for the termination of these benefits;

E. Alternatively, if the Court determines that Plaintiff meets the "Regular Occupation" definition of disability in the Plan and/or Policy for that entire timeframe, but the Court is unable to or declines to make a determination as to whether Plaintiff meets the Plan and/or Policy's "Any Gainful Occupation" definition of disability, then Plaintiff seeks an Order remanding his claim to the Plan Administrator and/or the Defendant so it can conduct an administrative review where he can submit new and additional evidence so the Plan Administrator may determine whether he meets the "Any Gainful Occupation" definition of disability;

1     F.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g), including for any Court ordered remand to the Plan Administrator and/or Defendant; and

    G.    For such other and further relief as the Court deems just and proper.

DATED this 7th day of March, 2017.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff